ELLEN F. ROSENBLUM
Attorney General
KYLEIGH GRAY  #203784
Assistant Attorney General
ROBERT SULLIVAN #983539
Senior Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
Telephone: (503) 947-4700
Fax: (503) 947-4791
Email:  kyleigh.gray@doj.state.or.us
        robert.sullivan@doj.state.or.us

Attorneys for Defendants Ackley, Beamer, French, Mack, Stout

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CHRISTOPHER C. MUELLER, | Case No.  3:22-cv-00785-MK |
| Plaintiff, | DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |
| v. | |
| OFFICER MS. MACK, OFFICER MR. STOUT SGT. FRENCH, SUPERINTENDENT ZACH ACKLEY DR. BEAMER, HEALTH SERVICES TLC COMMITTEE MEMBERS JOHN DOE JANE DOE, | |
| Defendants. | |

**CERTIFICATE OF CONFERRAL**

Defendants certify under Local Rule 7.1 that Plaintiff is an adult-in-custody not

represented by counsel and that conferral on this motion is not required.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Page 1 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
         KG8/ls8/795558479

Pursuant to Fed. R. Civ. P. 56, Defendants Officer Mack, Officer Stout, Sergeant French, Superintendent Ackley, Dr. Beamer, and Health Services TLC Committee Members hereby move for summary judgment on all of Plaintiff's claims.  Plaintiff alleges no genuine issue of material fact upon which relief can be granted.  This motion is supported by the attached *Memorandum of Law*, and the *Declaration of Dr. Warren Roberts*, and supporting Exhibits, submitted concurrently.

## MEMORANDUM OF LAW

### I.  INTRODUCTION

Plaintiff Christopher C. Mueller is an adult-in-custody ("AIC") with the Oregon Department of Corrections, currently housed at Deer Ridge Correctional Institution – Minimum ("DRCM") outside of Madras, Oregon.  *See* Declaration of Dr. Warren Roberts in Support of Motion for Summary Judgment ("Roberts Decl."), ¶ 3; ECF # 8, ¶ II.A.  On or about April 1, 2021, Plaintiff injured his right knee when he fell from the ladder on his upper bunk.

On August 22, 2022, Plaintiff filed his Amended Complaint in this case against Defendants Officer Mack, Officer Stout, Sergeant French, Superintendent Ackley, Dr. Beamer, and Health Services TLC Committee Members John and Jane Doe, alleging that they denied Plaintiff's requests for a lower bunk, resulting in a knee injury, and then delayed medical care and treatment such that Plaintiff's condition worsened.  ECF #8, ¶ IV.  Plaintiff contends that Defendants conduct constituted deliberate indifference in violation of his Eighth Amendment rights.  ECF # 8, ¶ IV.  Plaintiff's claims, however, are not supported by the evidence in the record, and this case should be dismissed.

### II.  FACTS

On or about April 1, 2021, Plaintiff fell from the ladder of his assigned top bunk and twisted his right knee.  ECF # 8, at pg. 5; Roberts Decl., ¶ 6.  Plaintiff did not report the knee injury, or request medical care for the knee injury, until April 8, 2021, when he submitted a health request form ("kyte").  Roberts Decl., ¶ 6.  There is no indication in Plaintiff's medical

Page 2 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

records or kytes that he had requested a lower bunk prior to his injury. Roberts Decl., ¶ 5. The very next day, April 9, 2021, Plaintiff was seen by Dr. Beamer, who examined Plaintiff's knee and observed that Plaintiff's deep tendon flexors looked good, that Plaintiff displayed good balance, and that Plaintiff did not show signs of knee instability or fluid on the knee. Roberts Decl., ¶ 7. Dr. Beamer also observed, however, that there was "large, significant pops" when Plaintiff squatted. *Id.* Dr. Beamer immediately ordered an x-ray of Plaintiff's knee, as well as anti-inflammatory medications, and scheduled a follow up appointment for two weeks later. *Id.*

On April 10, 2021, Plaintiff underwent an x-ray on his right knee. Roberts Decl., ¶ 8. The x-ray indicated that Plaintiff had not suffered from an acute fracture or significant arthropathy, but did show signs of probable joint effusion. *Id.* Dr. Beamer reviewed the x-ray results with Plaintiff at an April 21, 2021, follow-up appointment and noted that Plaintiff needed an MRI or orthopedic consult. Roberts Decl., ¶ 9. An MRI was approved by the Therapeutic Level of Care Committee ("TLC") on April 27, 2021, and was ultimately conducted on May 14, 2021. Roberts Decl., ¶ 10-11. The MRI showed that Plaintiff had suffered a complex tear in his meniscus and observed damage to the cartilage. Roberts Decl., ¶ 11. TLC approved an outside orthopedic consult on May 24, 2021. Roberts Decl., ¶ 12.

On July 21, 2021, Plaintiff underwent an orthopedic consult with an outside medical provider regarding his right medial meniscus tear. Roberts Decl., ¶ 14. The medical provider examined Plaintiff and noted that he did not have advanced arthritic features, and ultimately recommend surgical intervention for a complex medial meniscus tear. *Id.* In the meantime, the orthopedic medical provider also noted that Plaintiff should be assigned a lower bunk and should rest, ice, compress, and elevate ("R.I.C.E.") the knee to help with pain management. *Id.*

Page 3 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
KG8/ls8/795558479

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

Plaintiff had a pre-operation appointment with the orthopedic surgeon on October 4, 2021. Roberts Decl., ¶ 16. Plaintiff was provided with education and counseling regarding the upcoming scheduled surgery. *Id.* On October 14, 2021, however, an RN placed the following notation in Plaintiff's medical file: "AIC wants to discuss appts with attorney. He has future appts with attorney. He needs to check dates before he can decide to quarantine for outside surgery." Roberts Decl., ¶ 17. Plaintiff's scheduled surgery was subsequently pushed back to December 30, 2021. *Id.*

Unfortunately, Plaintiff's December 30, 2021, surgery had to be cancelled by the surgery center because of COVID-19 protocols. Roberts Decl., ¶ 18. Plaintiff received kytes from the facility explaining the situation and noting that surgery would be rescheduled as soon as possible, and Plaintiff was provided with anti-inflammatory medications to continue to manage the pain. *Id.* The communications between DRCM Health Services and Plaintiff also specifically note that due to COVID-19 protocols and interventions, Health Services was only temporarily seeing patients in person on an emergency or urgent basis. *Id.*

On or about December 26, 2021, Plaintiff contends that he fell on ice and further injured his knee. ECF # 8, ¶ IV, at pg. 5. The first time that is mentioned in Plaintiff's medical history was on January 3, 2022, at which time Health Services staff indicated that Plaintiff reported increased knee pain as a result of the fall, but that there was no indication of crepitus, edema, or increased warmth around the knee. Roberts Decl., ¶ 19.

On February 24, 2022, Plaintiff's surgery was rescheduled, and it was performed just a few days later on March 2, 2022. Roberts Decl., ¶ 20-21. Plaintiff underwent a successful surgery with no complications and he was provided with discharge instructions before returning to DRCM. Roberts Decl., ¶ 21. Upon his return to DRCM, Plaintiff was seen by a registered

Page 4 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
KG8/ls8/795558479

nurse, was provided with a wheelchair and crutches, and was permitted to return to his unit. Roberts Decl., ¶ 22.

Over the next week – between March 4, 2022, and March 10, 2022 – Plaintiff was seen daily in Health Services. Roberts Decl., ¶ 23. His medical records indicate that he was provided with a Toradol shot for pain, that there were no complications, and that his recovery was progressing well. *Id.* On March 10, 2022, Plaintiff was given a home exercise plan and care instructions from a physical therapist as he continued his recovery. Roberts Decl., ¶ 24.

Plaintiff had a post-operation appointment with the orthopedic surgeon on March 11, 2022. Roberts Decl., ¶ 25. Appointment notes indicate that the orthopedic surgeon found that Plaintiff's recovery was progressing well and that his incisions were healing as expected. *Id.* The orthopedic surgeon also provided Plaintiff with further instructions for post-operation care, including noting that he was able to begin showering as normal and that he could begin weight-bearing activity on the knee to the extent that could be tolerated. *Id.*

Plaintiff had a physical therapy consult on March 15, 2022, and was approved to begin walking without crutches. Roberts Decl., ¶ 26. Shortly after that appointment, however, Plaintiff began to report continued knee pain during his recovery and, on March 28, Plaintiff requested to see a medical provider. Roberts Decl., ¶ 27. An appointment was scheduled for March 31, 2022, but Plaintiff did not show. *Id.* He was seen by a DRCM nurse on April 5, 2022, was provided with instructions to rest, ice, and elevate the knee to help with the pain, and continue to take pain medication as needed. Roberts Decl., ¶ 28.

Plaintiff saw the orthopedic surgeon again on May 10, 2022. Roberts Decl., ¶ 30. The orthopedic surgeon noted that there was no new structural pathology in the knee, and that AIC Mueller's pain was likely caused by underlying chondral changes. *Id.* The orthopedic surgeon

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

recommended Meloxicam, physical therapy, and a follow up appointment if the symptoms did not improve within 6-8 weeks. *Id.* TLC approved, and Plaintiff began, physical therapy within the next week and a half. Roberts Decl., ¶ 31.

Since that time, Plaintiff has continued to experience ongoing pain in his knee, but has continued to receive care from ODOC and the orthopedic surgeon. Plaintiff continued physical therapy, has been seen and evaluated in Health Services throughout his recovery, and has consulted with the orthopedic surgeon regarding his ongoing pain. Roberts Decl., ¶ 32 -35. The orthopedic surgeon has indicated that Plaintiff's ongoing pain appears to be related to chondral changes to the knee. Roberts Decl., ¶ 35. The orthopedic surgeon has recommended continuation of strengthening exercises, Meloxicam as needed, and follow up as needed. *Id.* The provider has also discussed the possibility of a cortisone shot with Plaintiff, but Plaintiff has declined. *Id.*

Throughout the course of his injury, Plaintiff has been continuously evaluated by ODOC medical providers, outside providers, and physical therapists. Roberts Decl., ¶ 37. Importantly, providers have provided timely and appropriate care to Plaintiff since he sustained injury. *Id.* Although it appears that AIC Mueller's surgery was rescheduled on two occasions – once after his request to speak to his legal team regarding conflicts between the quarantine requirements and upcoming legal appointments, and once because of COVID-19 protocols – AIC Mueller's knee surgery was conducted appropriately and promptly. *Id.* Review of AIC Mueller's care during and after his surgery shows that he was cared for appropriately and promptly. *Id.* Moreover, there is no written record of a request – or a denial -- for a lower bunk restriction prior to Plaintiff's injury. *Id.*

Page 6 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
       KG8/ls8/795558479

## ANALYSIS

As set forth above, the Plaintiff received health services that were appropriate and tailed to his needs. According to Dr. Roberts, Medical Director for the Oregon Department of Corrections, Plaintiff's care was both timely and appropriate. Roberts Decl., ¶ 37. Plaintiff cannot make a showing that Defendants have failed to provide him with timely or appropriate care, much less that any individual defendant exhibited "deliberate indifference to [his] serious medical needs." *See Estelle*, 429 U.S. at 104. In addition, as explained below, Defendants are entitled to qualified immunity in this case.

**A.     Plaintiff cannot prove deliberate indifference to his serious medical needs in violation of the Eighth Amendment.**

Under the Eighth Amendment, the government has an "obligation to provide medical care for those whom it is punishing by incarceration." *Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). Failure to meet that obligation – that is, deliberate indifference to an individual's serious medical needs – can constitute a violation of the Eighth Amendment's proscription against cruel and unusual punishment that is cognizable under 42 U.S.C. § 1983. *Estelle*, 429 U.S. at 103. To establish an Eighth Amendment claim, a plaintiff must show that (1) he had a serious medical need, and (2) deliberate indifference to that need by defendants *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992). A medical need is serious if the failure to treat the AIC's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Id.* at 1059 (quoting *Estelle*, 429 U.S. at 104).

A prison official is deliberately indifferent if he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Deliberate indifference may be satisfied by

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

showing: "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "Indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'" *Id.* (quoting *McGuckin*, 974 F.2d at 1059). Deliberate indifference, however, is a high legal standard – even a showing of medical malpractice or negligence is not sufficient to establish a violation of the Eighth Amendment. *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

> **i.     Defendants were not deliberately indifferent to Plaintiff's serious medical needs by not assigning him a lower bunk on his arrival DRCM.**

First, Plaintiff alleges that Defendants Officer Mack, Officer Stout, Sergeant French, and Superintendent Ackley, were deliberately indifferent to his serious medical needs because they denied him an assigned bottom bunk upon his arrival at DRCM, despite his requests. ECF # 8, at pg. 4. Beyond his own allegations, however, there is no evidence to support Plaintiff's claims that he made a request for a bottom bunk, let alone that he was eligible for a bottom bunk restriction prior to his injury.

Plaintiff's allegation that he requested a bottom bunk, without more, is not sufficient to create an inference that Defendants Officer Mack, Officer Stout, Sergeant French, and Superintendent Ackley were aware that Plaintiff faced a serious risk of harm from being placed on an upper bunk, as required to sustain a claim for deliberate indifference. Accordingly, there is no evidence to suggest that Defendants either acted, or failed to act, in a manner that was deliberately indifferent to Plaintiff's serious medical need with regard to his request for a lower bunk restriction. *See Dickson v. Angelozzi*, No. 3:16-CV-01089-HZ, 2019 WL 1048828, at *4 (D. Or. Mar. 4, 2019) (granting summary judgment in Defendant's favor regarding the plaintiff's

Page 8 -    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
        KG8/ls8/795558479

deliberate indifference claim based on failure to provide evidence beyond allegations that the defendants denied a lower bunk request with knowledge that an upper bunk could seriously harm the plaintiff).

### ii. Defendants were not deliberately indifferent to Plaintiff's serious medical needs after he sustained his knee injury.

Here, Plaintiff's medical care does not demonstrate that Dr. Beamer – or any ODOC medical officials – were deliberately indifferent to Plaintiff's serious medical needs after he sustained his knee injury.  Instead, the record demonstrates that Plaintiff received timely and appropriate medical care.  *See* Roberts Decl., ¶ 37; Roberts Decl., Exhibit 1.

Plaintiff was seen by Dr. Beamer the day after he reported that he sustained an injury to his right knee a week prior.  Roberts Decl., ¶ 7.  Dr. Beamer immediately order an x-ray, and provided Plaintiff with anti-inflammatory medications to help him manage the pain.  *Id.*  When the x-ray imaging required additional imaging, Dr. Beamer immediately ordered an MRI and, when the results of the MRI indicated a complex meniscus tear, Plaintiff was almost immediately referred to an outside provider – an orthopedic specialist – for additional consultation.  Roberts Decl., ¶ 11-12.  Surgery was scheduled on that specialist's recommendation.  Roberts Decl., ¶ 14.

The record does indicate that there was a modest delay in Plaintiff's surgical intervention. Plaintiff's surgery was rescheduled on two occasions -- once after his request to speak to his legal team regarding conflicts between the quarantine requirements and upcoming legal appointments, and once because of COVID-19 protocols – but on each occasion the knee surgery was promptly and appropriately rescheduled as soon as was feasible.  See Roberts Decl., ¶ 17 - 18.  Plaintiff was provided with care instructions and pain management techniques in the meantime.  Roberts Decl., ¶ 18.  To the extent that delay did occur, delays were inherent to a

Page 9 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

system of managed care and the circumstances of COVID-19 pandemic, and not a conscious act

of Dr. Beamer – or any individually named ODOC official – to intentionally delay care or to

subject Plaintiff to ongoing pain or delay for the mere sake of delay. *See id.* In short, the modest

delays in conducting Plaintiff's surgery – at least one of which may have been at his own request

– do not amount to deliberate indifference.

> **iii.** **Even if the decisions surrounding Plaintiff's medical care could rise to the level of deliberate indifference, Plaintiff still fails to present sufficient evidence to support his claims.**

Even if Dr. Beamer's decisions regarding Plaintiff's medical care could rise to the level

of deliberate indifference, Plaintiff cannot establish that Dr. Beamer knew that a delay in the

scheduling and performance of Plaintiff's knee surgery was substantially likely to cause

Plaintiff's knee condition to worsen. In cases involving complex medical issues where a plaintiff

contests the type of treatment he received, or the lack thereof, expert opinion will almost always

be necessary to establish the requisite level of deliberate indifference. *Hutchinson v. United

States*, 838 F.2d 390 (9th Cir. 1988). "[A]lthough there may be subsidiary issues of fact in

dispute, unless plaintiff can provide expert evidence that the treatment he received equated with

deliberate indifference, thereby creating a material issue of fact, summary judgment should be

entered for the defendant." *Watson v. Sisto*, 2011 WL 5155175, *20-22 (E.D. Cal. Oct. 28,

2011).

The questions surrounding the timeliness of Plaintiff's knee surgery, and whether any

delay caused Plaintiff's condition to worsen beyond the harm caused by the initial injury itself, is

a complex medical issue. Without an expert, the ordinary lay person does not understand how a

short delay in receiving surgery would impact the ultimate outcome of the surgery, or how an

additional injury – like the December slip and fall incident that Plaintiff alleges worsened his

Page 10 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
KG8/ls8/795558479

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

condition – would contribute to worsening the condition, if at all. Even if Plaintiff's claim against Dr. Beamer is sufficient to state a claim for an Eighth Amendment violation under § 1983, he will be unable to establish that Dr. Beamer acted with deliberate indifference without expert testimony. Plaintiff's claim relies substantially on his own assertions that the medical care he received was below the standard of care, but he does not present any expert testimony to support that claim. Accordingly, Plaintiff will be unable to establish that Dr. Beamer acted with deliberate indifference towards Plaintiff's serious medical needs. Plaintiff's claim fails.

**B.      State Defendants are entitled to Qualified Immunity.**

Qualified immunity shield government officials from liability for damages when they make decisions that, even if constitutionally deficient, reasonably misapprehend the law governing the circumstances they confronted. *Brosseau v. Haugen*, 543 U.S. 194, 202 (2004); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982). An official should be denied qualified immunity only when "[t]he contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Qualified immunity is immunity from suit, not merely a defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Like absolute immunity, qualified immunity is effectively lost if a case is erroneously permitted to go to trial. *Id.* Consequently, immunity questions should be resolved at the earliest possible stage in litigation. *See Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*); *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

To determine whether an individual is entitled to qualified immunity, the first relevant question is the official violated Plaintiff's constitutional rights. *Saucier*, 533 U.S. at 201. The second inquiry is whether the law governing the constitutional right was clearly established. *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether

Page 11 -   DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* at 202. Courts may end the inquiry if either question is answered in the affirmative. *Id.* The Supreme Court has confirmed that what constitutes a clearly established right is not to be evaluated at a high level of generality, and that the violative nature of the particular conduct must be clearly established. *Ashcroft v. Al-Kidd*, 131 S. Ct. 2074, 2084 (2011).

As stated above, there is no evidence that supports Plaintiff's deliberate indifference claims. But, even if this Court finds that there is a genuine issue of material fact regarding Plaintiff's care before and after his injury, it should find that Defendants are entitled to qualified immunity in this instance. It would not be reasonably clear to a corrections official that failure to provide Plaintiff with a lower bunk at his request would give rise to a deliberate indifference claim, particularly without evidence that Plaintiff had previously suffered harm as a result of an upper bunk placement. Further, the decisions regarding Plaintiff's care after he suffered injury were prompt and attentive, and to the extent that Plaintiff contends they were not, the decisions were informed by other circumstances outside of ODOC's control – *i.e.*, the COVID-19 pandemic. Defendants are, accordingly, entitled to qualified immunity from damages because, if any wrongdoing at all, they reasonably misapprehend the law governing the circumstances they confronted. *Brosseau v. Haugen*, 543 U.S. 194, 202 (2004); *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).

Department of Justice
1162 Court Street NE
Salem, OR 97301-4096
(503) 947-4700 / Fax: (503) 947-4791

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment should be granted; Plaintiff's claims against them and his Complaint should be dismissed with prejudice.

DATED May __30__, 2023.

Respectfully submitted,

ELLEN F. ROSENBLUM
Attorney General


____*s/ Kyleigh Gray*_____
KYLEIGH GRAY #203784
Assistant Attorney General
ROBERT SULLIVAN #983539
Senior Assistant Attorney General
Trial Attorneys
Tel (503) 947-4700
Fax (503) 947-4791
kyleigh.gray@doj.state.or.us
robert.sullivan@doj.state.or.us
Of Attorneys for Defendants Ackley, Beamer,
French, Mack, Stout

Page 13 -  DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
KG8/ls8/795558479

## CERTIFICATE OF SERVICE

I certify that on May __30__, 2023, I served the foregoing DEFENDANTS' MOTION

FOR SUMMARY JUDGMENT upon the parties hereto by the method indicated below, and

addressed to the following:

Christopher Charles Mueller
SID # 22475590
Deer Ridge Correctional Institution
3920 East Ashwood Road
Madras, OR 97741

___ HAND DELIVERY
_X_ MAIL DELIVERY
___ OVERNIGHT MAIL
___ TELECOPY (FAX)
___ E-MAIL
___ E-SERVE

_____*s/ Kyleigh Gray*_____
KYLEIGH GRAY #203784
Assistant Attorney General
ROBERT SULLIVAN #983539
Senior Assistant Attorney General
Trial Attorney
Tel (503) 947-4700
Fax (503) 947-4791
kyleigh.gray@doj.state.or.us
robert.sullivan@doj.state.or.us
Of Attorneys for Defendants

Page 1 -   CERTIFICATE OF SERVICE
            KG8/ls8/ 552127073